UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STANFORD BOLDEN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:14-CV-26-RLM |
| | ) |
| CARAVAN FACILITIES MANAGEMENT, LLC, | ) |
| | ) |
| DEFENDANT. | ) |

OPINION and ORDER

This matter is before the court on defendant Caravan Facilities Management, LLC's motion for summary judgment. Plaintiff Stanford Bolden opposes the motion. The court heard argument on April 29, 2015.

I. BACKGROUND

Mr. Bolden is an ordained minister in the Missionary Baptist Church and is the senior pastor of his church. Mr. Bolden keeps the Sabbath on Sunday; he understands the Sabbath to begin at 12:01 a.m. on Sunday morning and to end at midnight that night.

From August to October 2011 and February to July 2012, Mr. Bolden was employed by Aramark Facilities Services, Inc. through Pro Resources Staffing Agency to perform janitorial work at the Marion, Indiana General Motors Stamping Facility on an as needed basis. The full-time Aramark janitors were members of the Local 977 of the United Automobile, Aerospace and

Agriculture Implement Workers of America; as a temporary employee of Pro Resources, Mr. Bolden wasn't a member of the union. During his employment with Pro Resources, Mr. Bolden spoke with Facility Manager Karen Schwartz, employed by Aramark, to request Sundays off so he could observe the Sabbath. Ms. Schwartz conferred with the union officials, who decided the union didn't object to a temporary, non-union janitor not being scheduled on Sundays. Ms. Schwartz told Mr. Bolden that Aramark and Pro Resources would accommodate his request, and he wasn't scheduled to work on Sundays.

Aramark turned over the facility management contract at the GM plant to Caravan Facilities Management, LLC in August 2012. During the transition period that took place the month before, Caravan offered full-time employment to the Aramark full-time, union janitors and the Pro Resources temporary janitors. Every janitor had to fill out an employment application, but Caravan honored the union members' seniority dates, positions, and shifts. Formerly temporary janitors were given a ninety-day probationary period, at the end of which they would become members of the union. Mr. Bolden submitted an employment application to Caravan and began his probationary period. Two other employees were hired under the same conditions.

Caravan and the union agreed that Caravan would adopt the janitors' existing neutral, rotating work schedule. The schedule included three janitorial shifts: First (6:30 a.m. to 3:00 p.m.); Second (2:30 p.m. to 11:00 p.m.); and Third (10:30 p.m. to 7:00 a.m.). The janitors worked five consecutive days and

then had two consecutive days off. The neutral, rotating schedule distributed the weekend work evenly among the janitors on each shift. Thus, the days on/days off schedule rotated. The collective bargaining agreement required shift assignments to be made according to seniority. Caravan didn't alter the union janitors' assigned shifts; Mr. Bolden and the two other probationary employees had no seniority and were placed on second shift.[1]

Mr. Bolden again asked for Sundays off in order to observe the Sabbath. A factual dispute exists about the substance of his conversation with Ms. Schwartz, now the Site Manager for Caravan, about his request. At his deposition, Mr. Bolden testified that Ms. Schwartz told him Caravan didn't want to accommodate him and to call-off if he couldn't get anyone to work in his place. Bolden Dep. 96:14–97:22, 145:20–146:4, Aug. 27, 2014. He said he didn't ask for further explanation. Bolden Dep. 104:4–10. Mr. Bolden acknowledged the janitors were allowed to trade days off, and he could have traded with a coworker who had a Sunday off. Bolden Dep. 99:1–100:23. According to Mr. Bolden, he wasn't able to find anyone to replace him because his coworkers wanted their Sundays off. Bolden Dep. 97:21–22, 101:4–10, 103:1–7. Mr. Bolden remembered that his coworker Tracy traded with him once, but otherwise he didn't remember the names of the coworkers that he had asked to trade or when he had asked them. Bolden Dep. 102:1–12,

---

[1] The second shift also had union members who had bid on-to or elected not to bid off-of the shift and two of the three lowest seniority union members. An empty spot on second shift was filled by bumping the remaining lowest seniority union member to the shift from his preferred first or third shift.

101:11–25. Mr. Bolden testified that he didn't remember whether he had any further discussions with Ms. Schwartz about his request, didn't recall discussing Caravan not accommodating his request with a union representative, and didn't discuss the issue with any other Caravan employees. Bolden Dep. 114:15–25, 104:11–23, 115:1–9. According to Ms. Schwartz's declaration, she again conferred with union officials about the request, but now that Mr. Bolden was a full-time employee and was going to be a part of the union at the end of his probationary period, the union was unwilling to make an exception to the neutral, rotating work schedule to give Mr. Bolden every Sunday off. Schwartz Aff. 4. Ms. Schwartz says she explained to Mr. Bolden that because he was no longer a temporary employee and was going to be a regular member of the union, he was subject to the rotating work schedule. Id.

Mr. Bolden called-off three Sundays in a row without getting a replacement. As a result, Caravan terminated his employment on October 10, 2012. There were ten Sundays between the time Caravan took over the facility management contract at the GM plant, making Mr. Bolden a probationary, full-time employee of Caravan, and Mr. Bolden's termination:

| Sunday | Mr. Bolden Scheduled to Work | Outcome |
|---|---|---|
| Aug. 5 | yes | didn't work |
| Aug. 12 | yes | traded with William (Tracy) Hampton |
| Aug. 19 | yes | traded with William (Tracy) Hampton |
| Aug. 26 | no | |
| Sept. 2 | no | |
| Sept. 9 | no | |

| Sept. 16 | no | |
| Sept. 23 | yes | called-off |
| Sept. 30 | yes | called-off |
| Oct. 7 | yes | called-off |

Four of the Sundays fell on Mr. Bolden's scheduled days off. The time records show that Mr. Bolden didn't work on August 5, although he was scheduled to do so. Caravan's records don't reflect whether another employee worked for Mr. Bolden on that Sunday or whether he called-off. Mr. Bolden testified that Mr. Hampton traded with him on at least one occasion; Caravan's records show that Mr. Hampton likely traded with Mr. Bolden on two Sundays, August 12 and 19. Mr. Bolden called-off on September 23, and he received an attendance warning on the 24th. Mr. Bolden signed a copy of that warning, as did his supervisor Jeff Price and his union representative. Mr. Bolden acknowledged that he received and signed the notice. Bolden Dep. 118:21–121:2. Mr. Bolden then called-off on September 30 and October 7. After the third Sunday that he called-off without a replacement, Caravan identified Mr. Bolden as an unsatisfactory probationary employee and terminated his employment.

Mr. Bolden filed suit against Caravan; he alleges Caravan violated Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*, when it didn't accommodate his religious belief and terminated his employment as a result. Caravan moves for summary judgment; it argues no genuine issue of material fact exists because it reasonably accommodated Mr. Bolden's religious belief through a neutral, rotating work schedule and the opportunity to trade

scheduled days on/days off with other employees and any alternative accommodation would have placed more than a *de minimis* burden on the company.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012). Factual disputes that preclude summary judgment are both material and genuine. Carroll v. Lynch, 698 F.3d at 564. "The underlying substantive law governs whether a factual dispute is material" and "a factual dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

## III. DISCUSSION

Caravan argues that it is entitled to judgment as a matter of law on Mr. Bolden's discrimination claim because Caravan offered Mr. Bolden a

reasonable accommodation for his religious belief and his suggested accommodation would have imposed an undue hardship on Caravan.

"Title VII prohibits employers from 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Porter v. City of Chicago, 700 F.3d 944, 951 (7th Cir. 2012) (*quoting* 42 U.S.C. § 2000e–2(a)(1)). Under Title VII, religion "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e–(j). To establish a prima facie case of religious discrimination "based on an employer's failure to provide reasonable accommodation, a plaintiff 'must show [1] that the observance or practice conflicting with an employment requirement is religious in nature, [2] that [he] called the religious observance or practice to [his] employer's attention, and [3] that the religious observance or practice was the basis for [his] discharge or other discriminatory treatment.'" Porter v. City of Chicago, 700 F.3d at 951. "Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any reasonable accommodation would result in undue hardship." Id. Mr. Bolden claims his observance of the Sabbath is religious in nature, he asked his employer for an accommodation, and his absence at work on Sundays was the reason for his termination. So, he claims to have established a prima facie case of religious discrimination. Caravan argues that regardless, it offered him a reasonable

accommodation and to accommodate his belief would cause it an undue hardship.

A. Reasonable Accommodation

Caravan contends that its neutral, rotating shift schedule combined with the opportunity to switch scheduled days on/days off with other employees was a reasonable accommodation. Mr. Bolden acknowledges Caravan's proposed accommodation but contends that whether the accommodation was reasonable is a question of fact for the jury.

*Reasonableness*

"[A] 'reasonable accommodation' of an employee's religious practices is 'one that eliminates the conflict between employment requirements and religious practices.'" Porter v. City of Chicago, 700 F.3d 944, 951 (7th Cir. 2012). The employer's duty to accommodate doesn't require the employer to violate a collective bargaining agreement or seniority system when the union was unwilling make an exception to the agreement or system in order to accommodate the religious belief of an employee. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 79, 81 (1977). At least two circuits have found a neutral, rotating work allocation schedule combined with employer authorized voluntary shift-swapping to be a reasonable accommodation for employees whose religious beliefs prevent them from working on a certain day each week.

Beadle v. Hillsborough Cnty. Sheriff's Dep't, 29 F.3d 589, 592 (11th Cir. 1994) (neutral rotating shift system with authorization to swap shifts sufficiently accommodated an employee who observed the Sabbath sundown Friday to sundown Saturday); Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141, 145 (5th Cir. 1982) (rotating shift scheduling system and opportunity to trade schedules sufficiently accommodated an employee who observed the Sabbath from sundown Friday to sundown Saturday). The court of appeals found that "it is a reasonable accommodation to permit an employee to exercise the right to seek job transfers or shift changes, particularly when such changes do not reduce pay or cause loss of benefits," with the caveat that "whether an accommodation is reasonable in a particular case must be made in the context of the unique facts and circumstances of that case." Rodriguez v. City of Chicago, 156 F.3d 771, 776 n.7 (7th Cir. 1998). For example, employer authorized shift-swapping isn't a reasonable accommodation for an employee who also has a religious objection to asking another employee to work for them on what they believe to be the Sabbath. Id. Mr. Bolden doesn't claim to have a religious objection to asking his coworkers to swap scheduled days on/days off with him but argues that whether the accommodation was reasonable is a question for the jury. He emphasizes that the reasonableness of the accommodation depends on the facts and circumstances of each case. The court doesn't disagree, but rotating shift schedules that spread weekend work as evenly as possible among employees are nearly universally recognized as a neutral way for employers to

distribute work and the opportunity for employees to swap shifts has been recognized as a way for employers to cure any conflict the neutral schedule creates with an employee's request for days off for religious reasons. Without a distinguishing circumstance, it isn't likely that a reasonable jury could find the same accommodation unreasonable in this case. *See* Williams v. U.S. Steel Corp., 40 F. Supp. 3d 1055, 1066 (N.D. Ind. 2014) ("[I]t seems likely, given the Seventh Circuit Court of Appeals' approval of shift-swapping and its approving citation of out-of-circuit cases such as Brener, 671 F.2d at 146, that U.S. Steel's shift-swapping arrangement is a reasonable accommodation."). Nevertheless, the court needn't decide whether the accommodation is reasonable as a matter of law because all other potential accommodations would place an undue hardship on Caravan.

*Interactive Process*

Mr. Bolden argues that a dispute exists about whether Caravan caused a breakdown in the interactive process. The federal regulations that implemented the Americans with Disabilities Act require an interactive process involving both the employer and the employee with a disability to determine the appropriate reasonable accommodation. Rehling v. City of Chicago, 207 F.3d 1009, 1015 (7th Cir. 2000). Mr. Bolden doesn't cite a similar regulation to

support the interactive process requirement in Title VII cases.² Regardless, Mr. Bolden doesn't allege a failure to engage in the interactive process claim that would survive the ADA standard. An employer is liable for failing to engage in the interactive process only if the lack of an interactive process resulted in a failure to identify an appropriate accommodation that otherwise would have been found. Spurling v. C & M Fine Pack, Inc., 739 F.3d 1055, 1059 n.1 (7th Cir. 2014). The parties dispute the substance of the conversation that took place when Ms. Schwartz told Mr. Bolden that Caravan wouldn't accommodate his request for every Sunday off. Mr. Bolden says that Ms. Schwartz told him Caravan didn't want to accommodate him and to call-off if he couldn't get anyone to work in his place. Bolden Dep. 96:14–97:22, 145:20–146:4. Ms. Schwartz says she explained to Mr. Bolden that because he was no longer a temporary employee and was going to be a regular member of the union after his probationary period, he was subject to the neutral, rotating work schedule and the union was unwilling to make an exception to that schedule. Schwartz Aff. 4. During argument on the summary judgment motion, counsel for Caravan said it doesn't dispute that Ms. Schwartz told Mr. Bolden to call-off if he couldn't find a replacement, but it contends the reason Ms. Schwartz told Mr. Bolden to call-off was because the consequences were more severe if he didn't show up for work and also didn't call-off. The question of fact, therefore,

---

² Mr. Bolden cites Filinovich v. Claar, No. 04 C 7189, 2005 WL 2709284, at *4 (N.D. Ill. Oct. 19, 2005), a Title VII case in which the court cited Rehling v. City of Chicago, 207 F.3d 1009, 1015 (7th Cir. 2000), an ADA case, for failure to engage in the interactive process standard.

isn't what Ms. Schwartz said to Mr. Bolden during that conversation – it is what Ms. Schwartz meant and what Mr. Bolden understood her to mean. The September 24th attendance warning that followed the first Sunday absence for which he called-off without a replacement undermines any contention that Ms. Schwartz gave Mr. Bolden permission to call-off for a scheduled shift. Further, Mr. Bolden's interpretation of Ms. Schwartz's comment doesn't align with the other statements Ms. Schwartz made during the conversation. Mr. Bolden understood Ms. Schwartz to say that Caravan didn't want to accommodate him. If Ms. Schwartz had given Mr. Bolden permission to call-off for a scheduled shift without consequences, Caravan would have been accommodating Mr. Bolden by making an exception to the facility's attendance policy and the attendant consequences for violating that policy. Nevertheless, the dispute about the meaning of the conversation isn't material because Mr. Bolden doesn't allege or explain how further clarification or discussion would have identified a reasonable accommodation. The court can't say the interactive process resulted in a failure to identify an appropriate accommodation for Mr. Bolden.

B. Undue Hardship

Even if the neutral, rotating schedule along with the ability to swap days on/days off wasn't a reasonable accommodation, Caravan argues Mr. Bolden's requested accommodation – a schedule with every Sunday off – would have

placed an undue hardship on Caravan. Mr. Bolden claims a factual dispute exists about the hardship that his absence would cause Caravan.

An employer isn't required to incur more than a *de minimis* cost – either in the form of lost efficiency in other jobs or higher wages – to accommodate an employee's religious practice. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977). "[E]very religious accommodation will inevitably cause some differences in treatment among employees, and differential treatment alone is not enough to create an undue hardship. But if accommodating an employee's religious beliefs also causes a 'real' and 'actual' imposition on co-workers, Title VII does not require an employer to make such an accommodation." Harrell v. Donahue, 638 F.3d 975, 980-981 (8th Cir. 2011) (*citing* Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 81 (1977)) (citations omitted). The employer bears the burden of proof and must show that any and all accommodations would have imposed an undue hardship on the conduct of its business. Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 455 (7th Cir. 2013) (*citing* 42 U.S.C. § 2000e-(j)).

Mr. Bolden doesn't suggest alternative accommodations. Caravan points to Mr. Bolden's deposition and says the only accommodation Mr. Bolden found adequate was to have every Sunday off. Bolden Dep. 141:22-142:18. One option, Caravan says, was to make an exception to the neutral, rotating days on/days off schedule for Mr. Bolden and never schedule him on Sunday. This could be done two ways. Since the system always schedules the employees with

two consecutive days off, when Mr. Bolden came up in the rotation with a schedule that didn't include a day off on Sunday, Caravan could swap his schedule with one of his coworkers whose schedule that week included a day off on Sunday. Alternatively, when the system assigned Mr. Bolden a schedule that didn't include a day off on Sunday, Caravan could leave Mr. Bolden's other days off intact and permit him to also have Sunday off. Caravan could then work an employee down, pay overtime to other workers to cover the shift, or hire an outside person to cover the shift.

A second option, which Caravan says Mr. Bolden suggested at his deposition, was to move Mr. Bolden to the third shift. Caravan claims this option doesn't align with Mr. Bolden's observation of the Sabbath from 12:01 a.m. to midnight on Sunday and ignores the seniority of Mr. Bolden's coworkers. The three lowest seniority union members were assigned to the second shift. Two were assigned to the shift by default after higher seniority union members claimed their shifts, and the third lost his preferred shift when a position needed to be filled on the second shift. To move Mr. Bolden to the third shift would disrupt the seniority system's distribution of shifts among the janitors and directly negatively impact the three union members with more seniority than Mr. Bolden and the two probationary employees who had the same seniority as Mr. Bolden. Caravan says this option would cause it to violate the CBA and deny Mr. Bolden's coworkers their contractual rights.

In Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), an employee requested a specific day off each week to observe the Sabbath, a seniority system set out in the collective bargaining agreement determined job assignments, and the employee didn't have the seniority to bid on the shift that would accommodate his religious belief. Id. at 67-68. To give the employee that specific day off every week, the employer could have violated the CBA and overridden the seniority system or allowed the employee to work a four day week instead of the standard five day week and either required another employee to cover the job duties or scheduled another employee for the day and paid them overtime. Id. at 76-77. The union was unwilling to depart from the CBA's provisions, and if the employer had unilaterally overridden the union's decision, the employer would have breached the CBA. Id. at 78-79. The court observed that to violate the CBA's neutral system that allocated days off would deprive the employee's coworkers of their contractual rights, id. at 81, and to have either another scheduled employee cover the job duties or pay a replacement employee would cost the employer in the form of either lost efficiency in another job or higher wages. Id. at 84. The court concluded the proposed accommodations imposed an undue hardship on the employer. Id. at 84-85.

First, Caravan argues that it needn't violate the CBA in order to accommodate Mr. Bolden's religious belief. The court agrees. Caravan wasn't required to make an exception to the neutral, rotating schedule that

distributed weekend work as evenly as possible among Mr. Bolden and his coworkers or to override the seniority system that dictated how the janitors bid on positions on shifts – both of which were designed and implemented by the CBA. EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 317 (4th Cir. 2008) ("It is well established that Title VII does not require an employer to violate the terms of a collective bargaining agreement, especially provisions pertaining to seniority-based scheduling."). On a related note, the exceptions to the neutral schedule and the seniority system also adversely impact the contractual rights of Mr. Bolden's coworkers. If the schedule is altered, they must either work more Sundays than Mr. Bolden or have fewer days off than Mr. Bolden. If the seniority system is disregarded, they lose the benefit of their tenure. *See* EEOC v. Firestone Fibers & Textiles Co., 515 F.3d at 317 ("[A]n employer is not required to adversely impact or infringe on the rights of other employees when accommodating religious observances.").

Next, Caravan contends that if it doesn't change the schedule and deals with Mr. Bolden's absence on the Sundays that he is scheduled, Caravan's options are to place the burden on one of Mr. Bolden's coworkers, lose productivity with one less worker, or incur the additional expense of compensating a replacement worker. These are the types of lost efficiency in another job or higher wages the Trans World Airlines, Inc. v. Hardison Court found to be more than a *de minimis* cost to impose on the employer. 432 U.S. at 84; *see also* Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141, 146-147 (5th

Cir. 1982) (hiring a substitute, having the employee's supervisor work for him, or operating without the employee were accommodations that would impose an undue hardship on the employer).

The court of appeals cautions that the undue hardship in Trans World Airlines, Inc. v. Hardison must be understood in the context of a seniority system or collective bargaining agreement. Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 456 (7th Cir. 2013). Both a seniority system and a collective bargaining agreement were in place for the janitors at the GM plant, and the union wasn't willing to make exceptions to them. The "existence of a neutral seniority system does not relieve the employer of its duty to reasonably accommodate the religious beliefs of its employees, so long as the accommodation can be accomplished without disruption of the seniority system and without more than a de minimis cost to the employer." Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999). Neither Caravan nor this court can think of an accommodation that allows Mr. Bolden to have every Sunday off but doesn't violate the CBA or impose more than a *de minimis* cost on Caravan.

Mr. Bolden simply responds that he has set forth enough facts to create a genuine issue of material fact regarding whether his absence would cause Caravan an undue hardship. Caravan contends Mr. Bolden hasn't set forth any facts on the topic at all, and the court agrees. Mr. Bolden can't rest on mere allegations at the summary judgment stage and must point to some evidence

that sets forth specific facts showing a genuine issue for trial. Scherer v. Rockwell Int'l Corp., 975 F.2d 356, 361 (7th Cir. 1992) ("Argument is not evidence upon which to base a denial of summary judgment."). Mr. Bolden doesn't explain how any of Caravan's proposed options that would accommodate his request for every Sunday off wouldn't cause an undue hardship on Caravan, and he doesn't propose any other options.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS the defendant's motion for summary judgment (Doc. No. 22), VACATES the July 1, 2015 final pretrial conference and the jury trial set for July 20, 2015, and DENIES as moot the joint motion to continue trial and all pretrial filing requirements (Doc. No. 25).

SO ORDERED.

ENTERED: June 8, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court